CAROLINE C. MCCREARY, CA Bar #176563
7081 N. Marks Avenue, Suite 104 PMB 302
Fresno, California 93711
Telephone: (559) 696-4529

Attorney for Defendant
Claudia Lizaola

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 1:18CR00207-15 LJO-SKO |
| Plaintiff, | ) | |
| | ) | SENTENCING MEMORANDUM |
| vs. | ) | |
| | ) | |
| CLAUDIA LIZAOLA, | ) | Date: January 27, 2020 |
| Defendant. | ) | |

**INTRODUCTION**

On November 4, 2019, Claudia Lizaola, hereinafter Claudia, pled guilty to count three of a five-count Indictment. Count three charges Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, Cocaine, and Marijuana in violation of 21 U.S.C. §§ 846, and 841(a)(1). There exists a written plea agreement pursuant to 11(c)(1)(B) filed with this court. Judgement and sentencing for this matter, is scheduled on January 27, 2020.

Claudia has reviewed the Presentence Report ("PSR") in this matter and agrees she has clearly demonstrated acceptance of responsibility and that her criminal history is minimal establishing a criminal history category of II.

**II.**

**BACKGROUND**

**A. The history and Characteristics of the Defendant**

Claudia was born to the union of Francisco Lizaola and Francisca Garcia. Her father died of a heart attack in 2015 and her mother works with Claudia and her sister, Gabriela Garcia,

who owns a taco catering business. Growing up, Claudia experienced rough times. On several occasions Claudia witnessed domestic violence. She witnessed her father physically abusing her mother. Her mother was 14 years old when she married her father. Claudia indicated life was good until her father began drinking heavily and when her mother left he promised he would stop drinking. Shortly thereafter her mother returned and her father moved the family to the United States improving her parent's relationship.

When Claudia was ten years old she was raped and three years later the same man grabbed her by hair and raped her again. Thereafter, he threatened her not to tell anyone or he would do the same to her sister. Years later, she married her current husband, Bernabe Juarez, whom Claudia indicates she has known her entire life and that they have been together for 26 years. They have five children. Tragically, when Bernabe and Claudia were living in Los Angeles, Claudia's son Jose was killed in a drive-by shooting. Claudia's husband was home when their son was shot several times and he held him in his arms while awaiting an ambulance but he bled out and perished before the ambulance arrived. It was at that time, her husband resolved to take the family out of Los Angeles and they moved to San Bernardino. Consequently, he gets up extremely early every day and drives to downtown Los Angeles to work. Albeit, the move was a smart decision for the welfare of the family, Claudia began to feel isolated which sadly led to her current demise as she spent hours on prisoner Facebook profiles wherein she became connected with individuals currently charged in the instant case, namely Denis Barrera Palma, who was identified as the leader of the Parkview set of the MS-13 criminal street gang.

### B. The Nature and Circumstances of the Offense

Claudia's prosecution stems from a drug transaction initiated via several Facebook conversations wherein Claudia and Barrera Palma discussed the price of the methamphetamine he was attempting to buy from her source.   On June 13, 2017, Barrera sent Claudia a message stating, "I have the money," to which Claudia asked, "How much?" To which Barrera responded "2,500." Barrera coordinated the purchase and he sent people to pick up the methamphetamine. On June 16, 2017 Claudia indicated to Barrera the people he sent had arrived and it was a done deal. Later that evening Barrera sent a picture of 15 bags of methamphetamine. On December 4,

2019, Claudia was interviewed by the probation officer in the presence of defense counsel and She admitted to, and took responsibility, for her part in the instant offense. Specifically, Claudia stated she felt bad because she failed her family. She further indicated that when her son was murdered she should have sought psychological help.

### III.
### THE COURT MAY CONSIDER ALL RELEVANT FACTORS IN SENTENCING CLAUDIA LIZAOLA

In keeping with *United States v. Booker,* 125 S.Ct. 738 (2005), hereinafter *Booker,* the question as to whether a sentence is reasonable is no longer dependent on whether it comports with the Guidelines. The Supreme Court has also held that "the range of choice dictated by the facts of the case is significantly broadened." *United States v. Gall,* 552 U.S. 38. Since the Guidelines are merely advisory "courts may vary from Guideline ranges based solely on policy considerations including disagreements with the Guidelines.

Even when the sentencing guidelines were mandatory, sentencing courts were to treat those before them as individuals. *Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been. uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual in every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). The command of Congress to impose a sentence that fits the crime and the person before the court.

As applied here, while the move to San Bernardino was made to keep the family safe, Claudia connected herself to the very destructive incarcerated prisoners her husband worked so hard to avoid. Ironically, in her isolation Claudia subconsciously wanted to connect to and understand the people that led to her son's demise. Tragically, alone in her grief for the loss of her son, Claudia made decisions and engaged in activities she never would have engaged in had her son been alive today. Therefore, Claudia respectfully requests this Court to exercise discretion and to sentence her to a period of incarceration that is "sufficient, but not greater than

necessary." Sentencing courts have the latitude to impose a sentence that is appropriate given the underlying facts that put the crime and the person before the court.

Dated:  January 14, 2020               Respectfully submitted,

                                                     Caroline C. McCreary
                                                   Attorney at Law

                                                   */s/ Caroline C. McCreary*
                                                   CAROLINE C. MCCREARY
                                                   Attorney for Defendant